JOSEPH WALKER

        Plaintiff,

v.                              Case No. 20-CV-0487

CITY OF MILWAUKEE, *et al.*,

        Defendants.

## PLAINTIFF'S MOTIONS IN LIMINE

NOW COMES Plaintiff Joseph Walker, by his attorneys, OVB Law & Consulting, S.C., and hereby moves the Court to enter the following:

**Motion in Limine No. 1.**     **Preclusion of Any Testimony that Defendants were "cleared" or "exonerated".**

Plaintiff hereby moves this Court for an order precluding Defendants or any defense witness or employee of the City of Milwaukee, the District Attorney's office, or the State of Wisconsin from testifying that the officers were "cleared" or "exonerated" in regard to the Walker shooting, or any other evidence or argument to this effect.

There are several instances in which a witness might say that the officers were "cleared" of wrongdoing; none of which is relevant to the question of whether or not they used excessive force: the District Attorney of Milwaukee County's decision that criminal charges will not be brought and the City of Milwaukee's internal review decision. We are not aware if any opinion has been formally rendered by the Wisconsin Department of Justice, Division of Criminal Investigation ("DOJ-DCI") as to the reasonableness of the officers' use of deadly force subsequent to its investigation of the Walker shooting, but since that was ostensibly the agency to which the investigation was entrusted, it

1

is possible that an individual agent or employee of the DOJ-DCI could be asked if, in his or her opinion, the officers acted reasonably or consistent with any State standards. Any such testimony should be excluded as well.

The finding of a prosecuting attorney that an officer's actions do not warrant criminal prosecution is irrelevant. The burden of proof in a criminal case would be different – a prosecutor would need to believe the case would satisfy the "beyond a reasonable doubt" burden of proof, a burden which is not present in a civil action. Even where a defendant in a civil case has been charged, tried, and acquitted, evidence of acquittal at the criminal trial is "inadmissible in a civil case involving the same incident since it constitutes a 'negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt." *Estate of Moreland v. Dieter*, 395 F.3d 747, 755 (7th Cir. 2005) (internal citations and quotations

omitted).

Similarly, the jury should not be permitted to hear that MPD's internal review "exonerated" the officers. Such a finding has no preclusive effect and would usurp the fact-finding function of the jury. The internal review was based, in large part, on credibility determinations; the reviewing officers adopted the perspective of the officers as reasonable. Additionally, allowing the testimony about the internal review will create a trial within a trial, as Plaintiff would then have to present evidence demonstrating the inadequacy of the internal review and show the jury that some "facts" on which the administrative review was based are simply not true.

In sum, and most importantly, the decision of the MPD to exonerate the officers under Department policy will be more prejudicial than probative – there is really no probative value in such evidence, but should it be admitted at trial, the probability of unfair prejudice and juror confusion would be great. *Masel v. Mansavage*, 2008 WL 5134916, 2 (W.D. Wis. 2008) (Randa, J.) ("The danger of unfair prejudice in allowing a law enforcement officer to opine on the

reasonableness of the conduct of fellow law enforcement officers counsels against the admission of this evidence. *See* Fed. R. Evid. 403."). With no probative value to balance against the prejudicial value, the evidence should be excluded.

**Motion in Limine No. 2.** **Preclusion of any Evidence Regarding Commendations Received by the Officers.**

Plaintiff, by its counsel, hereby moves the Court for an order precluding Defendants or any other defense witness from testifying that the officers received any commendations from the City or the Department during their time in service. Any such commendations, to the extent they exist, have no relevance as to whether the Defendants acted consistently with the Fourth Amendment when they shot Walker. Further, it would serve as impermissible character evidence under F.R.E. 404(a), leading the jury to believe that because an officer was commended for their service, they acted in conformance to the standards for commendation when they shot Plaintiff. Moreover, under F.R.E. 403, even if relevant, there is a substantial risk of unfair prejudice and misleading the jury, and therefore, it should be excluded from trial.

**Motion in Limine No. 3.** **To Exclude Evidence of any Guns found inside Walker's House or any the results of any inspection following the shooting.**

Plaintiff moves this Court for an order precluding the Defendants or any defense witnesses from testifying about the guns found inside of Walker's house or the results of the post-shooting inspection of the guns found inside Walker's house, such as whether they were loaded or operative.

It "is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L. Ed. 889 (1968). The objective reasonableness of an officers' use of force decision is judged based on the "circumstances known and information available to the officer at the time of his action."

*Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988). "Under the circumstances refers only to those circumstances known and information available to the officer at the time of his action." *Deering v. Reich*, 183 F.3d 645, 653 (7th Cir. 1999).

The defendant officers may testify in the case that they believed Walker had a gun, and they may testify that while they did not know for certain, they were operating, with the utmost prudence, on the assumption that the gun may very well have been present and loaded and operative. However, since no one has actually identified the weapon they believe Walker was allegedly holding at the time of the shooting, it would be unduly pejorative and prejudicial for any of the defense witnesses to testify about the guns found in his home post-shooting, or as to whether such guns were actually loaded or operative. This information could only have been gleaned after Walker was shot. This fact could not have factored into the officers' deadly force decision making in this case. Therefore, the facts learned post shooting should be excluded under Rules 401 and 403.

**Motion in Limine No. 4.      Exclusion of Walker's Prior Police Contact**

Plaintiff moves this Court for an order precluding the Defendants or any defense witnesses from testifying as to any of Walker's prior police contacts that were unknown to any officer on the scene.

Prior to the shooting, there is reason to believe that Walker may have had prior contacts for minor incidents with the police. The record does not indicate that any of the Defendants were aware of these prior contacts before shooting Walker on April 6, 2014.

It "is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure…warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L. Ed. 889 (1968). The objective reasonableness of an officers' use of force decision is judged based on the "circumstances known and information available to the officer at the time of his action."

4

*Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988). "Under the circumstances refers only to those circumstances known and information available to the officer at the time of his action." *Deering v. Reich*, 183 F.3d 645, 653 (7th Cir. 1999).

The Defendants should be prohibited from introducing irrelevant character evidence through evidence about these prior police contacts that were unknown to any officer on the scene at the time force was used because they are entirely irrelevant to the use of force analysis but may well serve to confuse the issues and prejudice the jurors against Walker.

**Motion in Limine No. 5.**      **Preclusion of any evidence or theory that Walker was attempting "Suicide by Cop" or similar theories**

Plaintiff moves this Court for an order precluding the Defendants or any defense witnesses from testifying as to Walker's motive or intent, including any character evidence that Walker was attempting "suicide by police", "suicide by cop", or that Walker intended to shoot at police.

When "considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial." *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997), citing Sherrod. "Knowledge of facts and circumstances gained after the fact has no place in the jury's post-hoc analysis of the reasonableness of the actor's judgment." *Id.* (internal ellipsis omitted.) For example, "evidence about the general nature of a plaintiff's schizophrenia and of the likelihood that such a person would act aggressively [is inadmissible], because the evidence would have shifted the focus from the plaintiff's actions to his condition." *Id.* at 1340, *citing Wallace v. Mulholland*, 957 F.2d 333 (7th Cir. 1992).

Similarly, evidence of the "decedent's mental health history" including "a suicide attempt by the decedent and his history of mental illness" is inadmissible because "to rule otherwise would have allowed the jury to conclude it would be reasonable to subdue the decedent based on supposed status, rather than his conduct at the time." *Id., citing Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 2986)

(excluding mental health record even though it was known by the officers at the time they used force, because it was more prejudicial than probative).

Evidence should be excluded where it will shift "the jury's attention from [the Plaintiff's] behavior at the scene…to information not possessed by [the officers], such as [Plaintiff's] mental state and [] physical behavior before the encounter." *Id.* In Palmquist, the court excluded evidence that the plaintiff had a "death wish" and a desire to commit "suicide by police," and that the previous night he was arrested for driving under the influence and marijuana possession, along with any other "foundational" or "'background' alcohol/drug evidence," including "specification of the amount of alcohol and marijuana in his body." *Id.* at 1341-42. In sum, if the officer "knew nothing of th[e] pre-existing condition and behavior when he first encountered" the Plaintiff "these facts could not have entered into [the officer's] determination on whether or not to shoot or how many times. The jury need[s] to know what [the officer] knew and saw when he fired the weapon. Hindsight should not…influence[] the jury's determination any more than it should…ratif[y the officer's] response to the situation." *Id.* at 1341.

There is simply no record that Walker intended to effectuate a "suicide by police" situation or intended to be shot by police. There is no record that would suggest that Officers Mahay, Clifford, Gonzalez or Purcelli believed that Walker intended to be shot by police or that such information factored in their decision to shoot Walker. Defendant Boll also never testified to this when asked about what she knew on the night in question before shooting Walker. Now, in an incident report authored by a different MPD officer, based on his interview with Boll on the day in question, pertinent portions of the report state as follows:

Sgt. BOLL indicated that in addition to WALKER'S mental health issues, she also learned that he had numerous guns inside of the residence. The guns included a 9 mm handgun, a shotgun, and an AK-47 assault rifle. All of these weapons were "out", and the shotgun was situated by the front door. WILL advised the officers that WALKER made statements that he was not afraid to shoot the police and he was not afraid to get shot by the police. Sgt. BOLL indicated that while speaking with WILL, she learned that WALKER was both homicidal and suicidal and that his demeanor was described as being "on edge".

Sgt. BOLL indicated that she and the other officers learned from WILL that WALKER'S threats frightened her and therefore she left the residence, telling him that she was going to get the prescription from Walgreen's. Sgt. BOLL

| Report Officer | Printed At | |
|---|---|---|
| 006829/KOPCHA,KEITH M | 05/12/2020 18:07 | Page 4 of 8 |

MPD-WALKER 000021

However, Defendant Boll has never confirmed that Walker's mother told her that her son "was not afraid to shoot the police and he was not afraid to get shot by police". But most importantly, Defendant Boll has never testified that this factored into her decision to shoot Walker, as such, it is irrelevant. Further, allowing this speculative double hearsay evidence posses the high risk of allowing a jury to wrongly conclude that it would have been reasonable to subdue Walker based on his supposed status (i.e., a person experiencing a mental episode), rather than his conduct at the time. In *Wallace v Mulholland*, the Seventh Circuit opined on the substantially prejudicial nature of allowing such evidence. 957 F.2d 333 (7th Cir. 1992). In *Wallace,* also a civil rights case alleging that the police officers used excessive force, the Court affirmed the inadmissibility of evidence about the general nature of a plaintiff's schizophrenia and of the likelihood that such a person would act aggressively, because the evidence would have shifted the focus from the plaintiff's actions to his condition. 957 F.2d at 336. The prejudice to the plaintiff would have outweighed the probative value to the officer. *Id.*

In *Wallace*, the Seventh Circuit relied on *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 1986), yet another civil rights action alleging use of excessive force by a state actor, in which the Court affirmed the decision not to receive evidence of the decedent's mental health history. 803 F.2d at 278.

In *Rascon*, the authorities argued that testimony that they were aware of a suicide attempt by the decedent and his history of mental illness would have helped to justify their actions in subduing the decedent, which led to his death. *Id.* In affirming the trial court's exclusion of this evidence, the

7

Seventh Circuit stated that to rule otherwise would have allowed the jury to conclude it would be reasonable to subdue the decedent based on supposed status, rather than his conduct at the time. As such, the Seventh Circuit puts the lessons learned from the *Rascon* case as:

> The lesson of Rascon is the danger that a jury will conclude that a mentally deficient plaintiff, regardless of his actual behavior, somehow "asked for" mistreatment at the hands of the two policemen is greater than the value of such evidence to explain the police officers' use of force.

*Wallace*, 957 F.2d at 336

The Defendants should be prohibited from introducing character evidence unknown to any officer on the scene at the time force was used, because character evidence is impermissible in its own right (Rule 404), it is entirely irrelevant to the use of force analysis (Rule 401), and it will serve to confuse the issues, distract from the totality of circumstances standard under which the officers should be judged, and unfairly prejudice the jurors against Walker  (Rule 403).

**Motion in Limine No. 6.     Preclusion of testimony from Defendants' expert witness, Todd Gray.**

Plaintiff moves this Court to preclude Defendants from calling their designated expert witness, Todd Gray, to testify in his entirety. Because the testimony identified in the Defendants' notice of expert testimony includes various assertions barred by the Federal Rules of Evidence, Defendants' expert should be precluded entirely from testifying at trial.

An expert's testimony must not be divorced from the bases that qualified them as an expert witness in the first place. *United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996). An expert's opinion is helpful only to the extent that it draws on the expert's skill, knowledge, or experience to formulate such opinion. *Id.*, at 1343. Federal Rules of Evidence 403, 702, and 704(b) operate to prohibit expert testimony that would merely tell the jury what result to reach. *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009).

8

Defendants' expert purports to testify that the Defendant Officer's actions in this case were in compliance with the applicable police department standard operating procedures, policies, and training. Taken alone, this testimony properly uses the expert's qualifications to apply the facts to his knowledge of general police procedure. However, Defendants wish to go beyond the allowable expert testimony in this case, urging their expert to testify to their opinion of the illegality of the force used, the lack of reason (based on the law) for officers to intervene, and the "objective" reasonableness of the force used in this case[1]:

A summary of the opinions that PO Gray is expected to testify to is as follows:

- Sergeant Boll, Officers Clifford, Gonzalez, and Mahay's use of force in the instant case were within their training, the policy and procedures of the MPD, and the DAAT guide in effect in April 2014.

- The actions taken by Sergeant Boll, Officers Clifford, Gonzalez, and Mahay to address the threat posed by Mr. Walker was objectively reasonable under the circumstances.

- The officers use of force was in compliance with their training, policies and procedures of the MPD, and did not constitute an illegal use of force.

- There was no reason, consistent with the training, policies and procedures of the MPD, and the controlling law, for the officers at the scene to intervene.

- Lieutenant Johnny Sgrignuloli's investigation into the excessive force complaint made by Mr. Walker was thorough and adequate given the facts and circumstances of the instant case.

---

[1] Defendants' Disclosure of Expert Testimony, April 4, 2023

Defendants look to use their expert to assert directly to the jury what result to reach and to testify on opinions that it is not qualified as an expert. This is the exact type of conclusory testimony that is prohibited under Federal Rules of Evidence 403, 702 and 704(b) as explained in *Noel.* 581 F.3d 490, 497 (7th Cir. 2009).

In *Noel*, one of the government's witnesses was called to describe the government's exhibits who was designated as an expert by the government. *Id.* at 494. When asked whether the exhibits fit within a legal definition of a criminal act which was impacted by the litigation, the witness responded affirmatively. *Id.* at 495. While the Seventh Circuit declined to overturn Noel's conviction, it noted the error in the witness's testimony when asked about the legal definition of the exhibits. *Id.* at 496. In noting an expert's opinion without substantiation was "worthless", the court found that the testimony should have been excluded because it was merely telling the jury what result to reach. *Id.* at 497.

Similarly, here, the City has designated an expert that is permitted to opine on facts related to the case. The Defendants would like their expert to testify that the Defendant Officers use of force was "objectively reasonable", a central inquiry to the claims of Plaintiff in this case. The expert would merely tell the jury what result to reach on each of the claims put forth by the Plaintiff. Removing all doubt about this impermissible testimony at this stage is critical to removing the possibility of substantial prejudice that the Defendants' expert may exert if allowed to testify in front of the jury.

Further than attempting to subvert the critical thinking of the jury, the Defendants' expert does not have the proper qualifications to testify to the stated topics it has designated. It is presumed that Defendants' expert, Todd Gray, has experience in the Milwaukee Police Department and may speak to the existence of policies and procedures that were in effect in April of 2014. Absent from this qualification is the expert's "knowledge, skill, experience, training, or education"

10

that permits testimony to the legality of Defendants' conduct in this case. Fed. R. Evidence 702. Defendants' have repeatedly expressed their expert will testify to the law, namely "[t]he officers use of force . . . did not constitute an illegal use of force" and "there was no reason, consistent with . . . the controlling law, for the officers at the scene to intervene."[2] Defendants have not, to date, provided the Plaintiff or his counsel with any qualifications under Fed. R. Evidence 702 which permit such testimony and are required by Fed. R. Civ. P. 26.

Because the Defendants' expert purports to assert their desired result directly to the jury, as well as the lack of qualifications for portions of the testimony expected from the expert, the Defendants should be prohibited from calling such expert at trial. Further, such testimony would distract from the totality of the circumstances standard under which the officers are to be judged and, therefore, unfairly prejudice the jurors against Walker.

**Motion in Limine No. 7.    Preclusion of evidence of Plaintiff's Criminal Convictions.**

Plaintiff requests a bar on any questions posed to Mr. Walker about his criminal convictions. Plaintiff has been convicted of fourth degree sexual assault (Milwaukee County Case No. 2002CM002032), manufacture/ deliver schedule four drugs, intent to distribute/ delinquency (with a use of dangerous weapon modification), disorderly conduct (Milwaukee County Case No. 2014ML007220), and unreasonable and imprudent speed (Milwaukee County Case No. 2020TR008047).

Pursuant to Federal Rule of Evidence 609, a conviction that is punishable by imprisonment for over one year may be admissible in a case where the witness is not a defendant. Fed. R. Evidence. 609(a)(1)(A). As an initial matter, the only criminal charges that Mr. Walker has been convicted of that contain punishments that may be greater than a year imprisonment are from the

---

[2] Defendants' Disclosure of Expert Testimony, April 4, 2023

2014 convictions of Intent to Contribute/Delinquency (Wis. Stat. § 948.40(1)) and Manufacture/Deliver Schedule IV Drugs (Wis. Stat. § 961.41(1)(i)), convictions that arose from the incident that is the subject of the instant civil case. None of the convictions in Mr. Walker's record are related to Mr. Walker making a dishonest act or false statement, and therefore, are inadmissible under Fed. R. Evidence 609 (a)(2).

While the two felony convictions may be admissible under Fed. R. Evidence 609(a)(1) or (b), the analysis continues on to Rule 403 to determine whether the introduction of the convictions for impeachment purposes is substantially outweighed by the considerations of Rule 403. While it is admitted that Rule 609 indicates the convictions have some probative value on credibility, the dangers of unfair prejudice and confusing the issues substantially outweigh this limited value.

As an initial matter, the Plaintiff's claims are premised on the information available to the Defendant Officers at the time of the incident: from the initial non-emergency phone call to police to the time the Officers opened fire on Mr. Walker. These convictions were not on Mr. Walker's record at the time, and the credibility of Mr. Walker testifying regarding the night in question in this case should not be sullied by an after-the-fact conviction which was largely premised on actions that the Defendant Officers initiated in this case. Additionally, discussing the after-the-fact conviction is likely to unfairly prejudice Mr. Walker as the jury will focus their attention on his criminal history rather than the fact that his constitutional rights were violated. Mr. Walker's criminal conviction as a result of this night has no bearings on the constitutional violations the Defendants made before he was charged and convicted.

**Motion in Limine No. 8.      Exclusion of Evidence Regarding Certain Photographs**

Plaintiff requests a bar preventing the defense from introducing evidence of a specific case photograph introduced by the Defendants in their Proposed Findings of Fact (ECF Doc. 56) to supplement their Motion for Summary Judgment filings. The Defendants Proposed Findings of Fact

12

#21 alludes to a "visible sign in front of the residence states intruders will be shot" outside the residence in question (*Id.*). However, the only case photograph of a sign exchanged in discovery in this matter includes a sign stating "We don't call 911, we use" with a picture of a gun. This photograph was produced by the Defendants in discovery.

If shown to the jury, this photograph will unfairly prejudice Mr. Walker's claims. Defendants have made no allegations that the responding officers saw this photo prior to the shooting nor that they were made aware of it prior to their response. Further, the claims at issue turn on the "objective" reasonableness of the officers at the time, which should not include considering whether an area has a sign which indicates "we don't call 911." Introducing this evidence serves no probative value to the fact-finding jury. Further, the photograph serves no probative value in litigating the claims; it does not prove the Plaintiff had a weapon which they would argue made the officers actions more reasonable, it does not prove that Defendants had less of an opportunity to intervene, and it does not prove that the City of Milwaukee's customs and failure to train were the moving force behind Plaintiff's constitutional violations. Thus, any evidence relating to this photo should be inadmissible (under FRE 403).

**Motion in Limine No. 9.       Exclusion of 911 Call Recordings**

Plaintiff moves this Court for an order precluding the Defendants or any defense witnesses from testifying about the 911 call that preceded the shooting. More specifically, Plaintiff seeks to exclude the 911 call recording or its contents in which Plaintiff's mother Luan Will communicated certain information regarding Walker to the 911 operator that the officers never heard before the shooting. Because the Officers did not hear the 911 calls, and since the circumstances to which they were responding are confined to what they heard from dispatch and what they encountered once they arrived on scene, the 911 recordings are irrelevant to the *Graham* analysis and should therefore be excluded.

Since the United States Supreme Court first elucidated the Fourth Amendment reasonableness standard in police shooting-death cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *Graham v. Connor*, 490 U.S. 385, 397 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). The United States Supreme Court reiterated that this standard is an objective one. *Kingsley v. Hendrickson*, et al., 576 U. S._389 (2015). Adhering to the parameters of what the officer knew at the time of the use of force in a Fourth Amendment reasonableness analysis is of the utmost importance because it maintains an essential balance and protects both law enforcement officers and the public. *See Tennessee v. Garner*, 471 U.S. 1, 25-26 (1985) (the Fourth Amendment requires the "careful balancing of the important public interest in crime prevention and detection and the nature and quality of the intrusion upon legitimate interests of the individual."), *citing United States v. Place*, 462 U.S. 696, 703 (1983)). In other words, whether or not the use of deadly force by the officers here was objectively reasonable under the circumstances must be based on the officers' "contemporaneous knowledge of the facts" and not the officers' subjective intentions, thoughts or beliefs.

Since this type of evidence is not relevant to the jury's reasonableness determination, it is irrelevant under FRE 401, and any probative value would be substantially outweighed by the risk of unfair prejudice that the jury would rest its decision on an improper basis and judge the shooting with 20/20 hindsight (under FRE 403). For these reasons and because the evidence is unduly prejudicial, evidence of the 911 call should be excluded.

**Motion in Limine No. 10.    To Exclude From Courtroom all Non-Party Witnesses**

Plaintiff requests excluding all non-parties from being in the courtroom until called upon to testify.

14

**Motion in Limine No. 11.    Exclusion of Mr. Walker's April 7, 2014 Mirandized Custodial Interrogation**

Plaintiff requests this Court to enter an order precluding the discussion or admission of the mirandized police interrogation of Mr. Walker conducted on April 7, 2014. Although Mr. Walker was read his *Miranda* rights and seemingly waived those *Miranda* rights, his statements, given the totality of the circumstances, were not truly voluntary.

Defendants may waive their Miranda rights, but only if the waiver is "made voluntarily, knowingly, and intelligently." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Determining whether a waiver meets this standard requires a two-step inquiry:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Id.*

A court must consider "the defendant's background and conduct, the duration and conditions of the interview and detention, the physical and mental condition of the defendant, the attitude of the law enforcement officials, and whether law enforcement officers used coercive techniques, either psychological or physical." *United States v. Vallar*, 635 F.3d 271, 284 (7th Cir. 2011) (quoting *Shabaz*, 579 F.3d at 820.).

The custodial interrogation of Mr. Walker that occurred on April 7, 2014 occurred just hours after Mr. Walker had been discharged from the hospital to be transferred for booking at the Milwaukee County Jail, and while he was still under the influence of several prescription painkillers and opioids, including fentanyl, gabapentin, HYDROmorphone, and oxycodone, after being

15

subjected to an objectively traumatic police shooting. He also indicated to the interviewing officers that he had not slept in four days. Furthermore, the police report narratives and the video/audio recording of the interview do not line up, leading to several prejudicial inconsistencies. Plaintiff anticipates Defendants will specifically attempt to use these statements to impeach Mr. Walker.. Based on the totality of the circumstances, it is not likely that his waiver of *Miranda* was knowing, voluntary, and intelligent. Thus, the admission and use of these statements should be barred – even for impeachment purposes.

**Motion in Limine No. 12**     **Order to Allow Plaintiffs' Counsel to Treat Police Officer/Defendants/City Employees as Adverse Witnesses Pursuant to FRE 611**

Plaintiff moves this Court in limine to issue an order permitting Plaintiff to call defendant officers, other police officers and City of Milwaukee employees as adverse witnesses. Calling a person as an adverse witness and the use of leading questions upon direct examination is governed by FRE 611(c). In relevant part, Rule 611(c) provides that leading questions can be used "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

In this case, in addition to the Defendant officers, the City of Milwaukee is a party to the case. There can be no question that all City of Milwaukee employees are identified with the Defendants. Under Rule 611(c), since they are identified with an adverse party, Plaintiff should be permitted to call them as an adverse witness.

There is no better example of a witness identified with an adverse party then a police officer called as a witness in a section 1983 trial involving an incident in which he was involved. The leading case addressing this issue is *Ellis v. City of Chicago*, 667 F.2d 606 (7th Cir. 1981), a section 1983 case against a Chicago police officer and the City of Chicago. In Ellis, the Seventh Circuit squarely ruled that a police officer who was employed by the City of Chicago and involved in the incident at issue "clearly qualified" as a witness identified with an adverse party pursuant to FRE 611(c). Id. at 612-

16

13. *See also, e.g., Haney v. Mizell Mem. Hosp.*, 744 F.2d 1467, 1477-78 (11th Cir. 1984) (finding that plaintiff in a medical malpractice case should have been allowed to call nurse as an adverse witness under FRE 611(c) since she was employed by the defendant hospital and therefore identified with an adverse party); *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984) (finding that a bank-robbery defendant's girlfriend could be asked leading questions by the government on direct examination since she was identified with an adverse party); *Perkins v. Volkswagen of America*, 596 F.2d 681, 682 (5th Cir. 1979) (error for trial court not to allow plaintiff to call defendant's employee as an adverse witness; person was employed by the defendant and therefore identified with an adverse party).

It is black-letter law that, under FRE 611(c), when a party calls a witness who is identified with an adverse party, the order of the examination is simply reversed, and the "cross-examination" may not employ leading questions. A leading treatise, Trials, Thomas Mauet (Aspen 2005) explains:

"How does the leading questions rule apply when the witness being examined as an adverse party or a witness identified with an adverse party? The lawyer calling the adverse party is permitted to use leading questions during the questioning. Thereafter, if the lawyer for the adverse party wishes to examine the party, she cannot use leading questions."

*Id.* at 212-13.

Based on the foregoing, Plaintiff's counsel should be allowed to call the Defendant Officers and all non-party Milwaukee police officers and City of Milwaukee witnesses as adverse witnesses.

Respectfully submitted this 2nd day of October 2023.

**OVB Law & Consulting, S.C.**
*Attorneys for Plaintiff*

*Electronically signed by*:
*s/ O. Emil Ovbiagele*
State Bar No. 1089677
*s/Samantha H. Baker*
State Bar No. 1101385
826 N. Plankinton Ave, Suite 600
Milwaukee, WI 53203
(414) 585-0588 (office)
(414) 255-3031 (fax)
emil@ovblaw.com
samantha@ovblaw.com

18