**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

JOSEPH WALKER,

     Plaintiff,

     v.                         Case No.  20-CV-487

CITY OF MILWAUKEE, et al.,

     Defendants.

**DECISION AND ORDER ON PLAINTIFF'S MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

On April 6, 2014, Joseph Walker was shot at multiple times by several Milwaukee Police Department ("MPD") officers and sustained injuries when one of the bullets struck him. Walker sued the City of Milwaukee (the "City"), along with MPD Sergeant Tanya Boll and MPD Officers Balbir Mahay, Jeremy Gonzalez, Daniel Clifford, and Lisa Purcelli under 42 U.S.C. § 1983 for violating his constitutional rights. Specifically, Walker alleged that Boll, Mahay, Clifford, and Gonzalez used excessive force against him when shooting him and that Gonzalez, Boll, Purcelli, Mahay, and Clifford failed to intervene to stop the excessive force. Walker sued the City for failure to train its officers.

Walker's case was tried to a jury from November 27, 2023, to December 1, 2023. The jury rendered a verdict in Walker's favor on his excessive force and failure to intervene claims. (Docket # 123.) Walker was awarded $1 million in compensatory damages on each claim. (*Id.*) The jury determined, however, that Walker did not prove that punitive damages should be assessed as to either claim. (*Id.*) The jury found in favor of the City on Walker's failure to train claim. (*Id.*)

Walker now moves for an award of attorneys' fees and costs in the amount of $474,049.88 pursuant to 42 U.S.C. § 1988. (Docket # 130.) The City objects to the amount of fees and costs sought. (Docket # 139.) For the reasons explained, Walker's motion for attorneys' fees and costs is granted in part and denied in part.

## LEGAL STANDARD

Section 1988 provides that in any action or proceeding to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). The starting point for determining reasonable attorneys' fees is the lodestar method, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).

As to hours "reasonably expended," counsel for the prevailing party:

> should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Hensley*, 461 U.S. at 433 (internal quotation and citation omitted). Once the lodestar is calculated, there is a "strong presumption that the lodestar represents the reasonable fee."

2

*City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted); *Pickett*, 664 F.3d at 639.

However, the court may adjust the lodestar amount upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley*, 461 U.S. at 430, n.3, 436. The other factors to be considered as delineated by the Supreme Court are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (citing *Hensley*, 461 U.S. at 441). In sum, "[t]he standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly*, 177 F.3d at 597.

## ANALYSIS

*1.     Calculation of the Lodestar*

Walker seeks attorneys' fees for the work of eight attorneys, two paralegals, a legal assistant, and two law clerks. (Docket # 130 at 3–4.) Walker's request is summarized as follows:

3

| Attorney/Paralegal | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Attorney Ovbiagele | 327.90 | $300-$350 | $111,285[1] |
| Attorney Baker | 144.4 | $275-$300 | $42,970 |
| Attorney Cade | 165.3 | $505 | $83,476.50 |
| Attorney Dartt | 118[2] | $120-$250 | $24,755 |
| Attorney Brown | 50.8 | $250 | $12,700 |
| Attorney Mirka | 1.2 | $250 | $300 |
| Attorney Pusick | 15.30 | $285 | $4,360.50 |
| Attorney Bedder | 26.40 | $250 | $6,600[3] |
| Paralegal O'Neill | 161.90 | $120 | $19,428 |
| Paralegal Baldwin | 89.60 | $120 | $10,752 |
| Legal Assistant Daniel | 1.60 | $120 | $192 |
| Law Clerk Gross | .6 | $120 | $72 |
| Law Clerk Wagner | 12 | $120 | $1,440 |
| **TOTAL** | **1,115** | | **$318,331** |

## 1.1 Number of Hours Expended

Defendants argue the 1,115 hours expended litigating this case was excessive and unreasonable. Defendants' objections fall into three categories: (1) the case was overstaffed; (2) specific billing entries are vague, excessive, and/or duplicative; and (3) fees should not be granted for the unsuccessful *Monell* claim. (Docket # 139 at 5–10.)

### 1.1.1 Overstaffing

Although this action was filed in March 2020, Walker litigated the case *pro se* until the Court granted his motion to recruit counsel in January 2022. (Docket # 33.) Counsel from OBV Law & Consulting, S.C. first began working on Walker's case in late January

---

[1] Walker calculated this total as $111,255, which appears to be in error. (*See* Docket #130 at 3.) Attorney Ovbiagele logged 69.6 hours at $300 per hour and 258.3 hours at $350 per hour. (Declaration of Ohioma Emil Ovbiagele, Ex. B, Docket # 131-2.)

$$69.6 \text{ hours} \times \$300 \text{ per hour} = \quad \$20,880$$
$$258.3 \text{ hours} \times \$350 \text{ per hour} = + \$90,405$$
$$= \quad \$111,285$$

[2] Attorney Dartt logged one hour of work at a rate of $0 per hour. (Declaration of Ohioma Emil Ovbiagele, Ex. B at 16, Docket # 131-2.) Because Attorney Dartt did not charge for this hour, it has been excluded from his total hours worked.

[3] Walker calculated this total as $2,875, which appears to be in error. (*See* Docket #130 at 3.) Attorney Bedder worked 26.4 hours at a rate of $250 per hour.

$$26.4 \text{ hours} \times \$250 \text{ per hour} = \$6,600$$

4

2022 and continues to do so until the present. (Declaration of Ohioma Emil Ovbiagele ("Ovgiagele Decl.") ¶ 27, Ex. B, Docket # 131-2.) In this approximately two-year period, five attorneys from OBV Law & Consulting billed 642.3 hours litigating this case. Attorney Ovbiagele engaged Cade Law Group to serve as co-counsel in Walker's case in September 2023. (*Id.* ¶ 26.) From October 29, 2023, through December 5, 2023, three attorneys from Cade Law Group billed 207 hours litigating this case. (Declaration of Nathaniel Cade, Jr. ("Cade Decl.") ¶ 15, Ex. A, Docket # 137-1.)

While "efficiency can sometimes be increased through collaboration," the Seventh Circuit counsels that "overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." *Schlacher v. L. Offs. of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009). For the trial itself, besides the three counsel of record trying the case, Walker seeks attorneys' fees for the time of two of Attorney Cade's associates, Attorney Pusick and Attorney Bedder, and one of Attorney Ovbiagele's associates, Attorney Dartt. All three attorneys are recent law school graduates, graduating in 2021, 2023, and 2023, respectively. (Declaration of Nathaniel Cade, Jr. ("Cade Decl.") ¶¶ 13–14, Docket # 137; Ovgiagele Decl. ¶ 15.) Counsel billed for such work as "assisting with jury selection," "opening statement issues," "attending and observing the trial," and "exhibit tracking and juror impressions to communicate with attorneys of record." (*See, e.g.*, Docket # 137-1 at 3; Docket # 131-2 at 38.) Walker argues that, for young lawyers, their "assistance and observation of their partners at a federal jury trial is unmatched exposure to the judiciary and a jury"; thus, the "time billed by these associates is appropriate and ensures that the Court receives advocates prepared for full scale litigation." (Docket # 140 at 11.)

5

While I agree that federal trials provide invaluable learning experiences for young attorneys and encourage their participation, it is not reasonable for a firm to bill its clients for its associates' training time. *See Carr v. Inch*, No. 214CV00001JMSMJD, 2021 WL 3891650, at *8 (S.D. Ind. Aug. 13, 2021), *report and recommendation adopted*, No. 214CV00001JMSMJD, 2021 WL 3884288 (S.D. Ind. Aug. 31, 2021) ("The Court also agrees with Defendant that it is not reasonable to award fees for hours expended for 'training' associates."). As one court in this circuit explained, "[w]hile such training undoubtedly improved the efficiency of the work done on this case, it also presumably improved the associates' efficiency in all of their work for the firm, and is thus more akin to an overhead expense than something for which the firm would bill a client." *Id.* Furthermore, these three attorneys' efforts were duplicative. For example, Walker argues that Attorneys Pusick and Bedder were performing such functions as making sure the jury remained alert and providing insights via messaging to counsel as to the jury's reactions. (Docket # 140 at 11.) But Attorney Dartt also billed for communicating juror impressions to counsel trying the case. (Docket # 131-2 at 38.) Given Walker had three attorneys at counsel's table and only one attorney at a time could question a witness, it is unclear why these tasks assigned to three separate associates could not be performed by those at counsel's table or why the City should pay for this staffing choice. Thus, I will strike the trial time of these three associates.[4]

The City further argues that it was unnecessary for Walker to have three attorneys and a paralegal present during the five-day trial; thus, I should strike the billing entries of

---

[4] Attorney Pusick's time will be reduced by the 13.2 hours billed during trial; Attorney Bedder's entire time will be struck as it was all incurred during trial; and Attorney Dartt's time will be reduced by the 24.4 hours billed during trial.

paralegal Austin Baldwin. (Docket # 139 at 10.) While utilizing a paralegal in place of an additional attorney at trial to perform administrative-like tasks such as organizing exhibits is certainly a good cost-saving strategy for one's client, it is entirely unclear from the billing records what tasks Baldwin performed. While Walker argues that Baldwin, as well as "any other individual identified," "spent countless hours preparing exhibits and offering suggestions on how to present evidence efficiently," (Docket # 140 at 12), his billing records do not reflect the work he performed. Rather, Baldwin billed 33.5 hours for "attending" the trial. (Docket # 131-2 at 38–40.) Given this vague description, it is impossible to evaluate whether Baldwin's presence at trial was duplicative of the work done by Walker's three counsel of record. Thus, I will strike Baldwin's 33.5 hours of time billed at trial.

### 1.1.2    Excessive Time

Defendants also challenge certain specific billing entries that they argue are excessive for the work described. (Docket # 139 at 5–8.) To begin, as to the work performed by OVB Law & Consulting, Defendants challenge 19.5 hours of time spent by Attorney Allysa Brown as excessive. As an initial matter, Attorney Brown's challenged entries are all block-billed. Block billing, in and of itself, is not a prohibited practice, *see Novoselsky v. Zvunca*, No. 17-CV-427-JPS, 2018 WL 941731, at *4 (E.D. Wis. Feb. 16, 2018) (citing *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006)), and when an entry, though block billed, generally represents related and compensable tasks, the block billing is relatively harmless, *see Alberth v. S. Lakes Plumbing & Heating, Inc.*, No. 19-CV-62, 2021 WL 2779038, at *5 (E.D. Wis. July 2, 2021). But Attorney Brown's block-billed entries are particularly challenging to review. For example, her entry on May 3, 2022, for 6.5 hours reads as follows:

Reviewed all CAD reports and updated discovery template. Searched through discovery. Read emails from Attorney Huddleston regarding discovery requests. Drafted an email to Asst. City Attorney Anthony Jackson in regards to missing discovery. Corresponded with Austin to get a copy of Plaintiff's First Set of Written Interrogatories, Demand for Production of Documents, and Request for Admissions from Mr. Walker. Sent email to Asst. City Attorney Anthony Jackson.

(Docket # 131-2 at 2.) This entry contains seven tasks, some of which are vague, such as "searched through discovery." On July 11, 2022, Attorney Brown block-billed 5 hours for revising interrogatories, Bates stamping production, compiling document folders, and emailing opposing counsel. (*Id.* at 7.) She block-billed an additional 3.5 hours that same day in an entry that also included Bates stamping and revising interrogatories. (*Id.*) Bates stamping and compiling document folders are administrative tasks; attorney time spent on tasks of this nature are non-compensable. *See Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). However, because Attorney Brown's entries are block billed, I cannot simply excise the uncompensable tasks from the compensable ones. Thus, I will strike the entirety of the challenged entries from May 3, 2022, and July 11, 2022, or 11.5 hours.

Defendants also challenge Attorney Brown's September 30, 2022 entry for 8 hours for compiling the Walker deposition book and developing sample questions for Attorney Baker. (Docket # 139 at 6.) It is entirely unclear what deposition this entry pertains to. To the extent she was preparing for Walker's deposition (given the entry states "Walker Deposition book"), because Attorney Baker was defending the deposition, not taking it, there was no need to spend eight hours developing questions. Perhaps Attorney Brown was referring to Officer Mahay's deposition, which occurred on October 13, 2022, shortly after the entry. (Pl.'s Ex. 45, Docket # 116-44.) The deposition itself, however, took just short of

two and a half hours, and Attorney Baker asked about four substantive questions. (*Id.* at 30.) Given the lack of clarity in this entry, I will strike it as well.

Defendants challenge several of Attorney Ovbiagele's time entries as excessive and/or redundant. Specifically, Defendants argue the entry on October 6, 2022, for 9.5 hours spent preparing for Officer Mahay's deposition and the entry on October 18, 2022, for 9.5 hours spent preparing for Officer Clifford's deposition are excessive for the work described. Given these are both defendants in the case, the time spent reviewing records and discovery and otherwise preparing for the depositions does not strike me as excessive. Defendants also challenge the time spent preparing for Officer Boll's deposition on January 4, 2023, and January 5, 2023. While Defendants list these entries twice in their brief (*see* Docket # 139 at 6–7), the entries only appear once in the actual billing records (*see* Docket # 131-2 at 15–16). Attorney Ovbiagele billed 9.6 hours preparing for this defendant's deposition. This number is in line with Attorney Ovbiagele's preparation for other defendants' depositions and I do not find this time excessive.

Defendants also challenges entries on October 23, 2022, October 24, 2023, and November 20, 2023, for 1.8 hours, 4 hours, and 7 hours, respectively. This time was devoted primarily to research of legal issues. While I do not find the first two entries excessive, I do question the duplication of efforts researching the *Heck* and *Gilbert* issues. Attorney Pusick billed 2.1 hours on November 21, 2023, researching this same issue, specifically noting that she provided suggestions to Attorney Ovbiagele's firm on the topic. (Docket # 137-1 at 3.) Attorney Ovbiagele's November 20, 2023 entry is block-billed; thus, it is difficult to determine the time spent on research. Because counsel should not double-bill for this time, I will strike Attorney Pusick's 2.1 hours researching the issue.

9

Defendants challenge several entries amounting to 18 hours billed by paralegals Joey O'Neill and Austin Baldwin. (Docket # 139 at 6.) O'Neill billed 5 hours each on June 8, 9, and 10, 2022, for "review and analyze discovery material for attorney review." (Docket # 131-2 at 4–5.) Baldwin billed 3 hours on June 30, 2022, for finalizing discovery binders. (*Id.* at 6.) As to O'Neill's three entries, I agree they are duplicative and will allow billing for only one entry. However, while Defendants also challenge as excessive the three hours spent by Baldwin finalizing discovery binders, I find this is appropriate work to delegate to a paralegal and the time spent is reasonable.

Finally, the Defendants challenge 10 hours billed by summer law clerk Sydney Wagner. Wagner billed 4 hours on both July 5 and July 6, 2023, researching "the evidentiary standards for admissibility of prior criminal convictions or acts in civil cases." (Docket # 131-2 at 23.) Wagner billed 2 hours on August 8, 2023, researching "FRCP for Walker." (*Id.* at 24.) The entries on July 5 and July 6 are both duplicative and excessive for the stated issue. The August 8 entry is vague. It appears this time billed for Wagner, who was a law student at the time, is more akin to training time as discussed above and not properly billed to the client. Thus, I will strike these 10 hours.

Defendants also challenge two entries on the Cade Law Group's invoices as vague and/or excessive. First, they challenge Attorney Cade's entry on November 13, 2023, for 2.2 hours for "research defendant police officers." (Docket # 137-1 at 2.) Defendants also challenge Attorney Cade's entry on November 26, 2024, for 2.8 hours for reviewing *Batson* case law for jury selection. (*Id.* at 3.) Walker contends that the first entry is not vague because it "states exactly what work was performed" and is not excessive because of the "number of defendants in this specific case." (Docket # 140 at 9.) Although the entry is not

10

completely clear, giving counsel the benefit of the doubt for how he chose to prepare for trial, I will not strike the 2.2 hours from November 13.

As to the November 26 entry, Walker argues that research takes "a significant amount of time" and although the *Batson* standard is well-established, one must always check for updates in the law. (Docket # 140 at 9.) While I agree it is prudent to check for updates on the law, 2.8 hours is excessive given *Batson* is well-established and counsel was not researching a specific *Batson* issue. Thus, I will allow counsel one hour for researching updates on *Batson*.

In summary, I will strike 1.8 hours of Attorney Cade; 19.5 hours of Attorney Brown; 2.1 hours of Attorney Pusick; 10 hours of Paralegal O'Neill; and 10 hours of Law Clerk Wagner.

### 1.1.3  Time Spent on Unsuccessful *Monell* Claim

Defendants argue that Walker should not recover attorneys' fees spent litigating the *Monell* claim because the jury found in favor of Defendants at trial on this claim. Defendants request a reduction of approximately 5.5 hours. (Docket # 139 at 9.) Walker argues that because the facts and legal theories between the *Monell* claim and the individual officers' claims overlapped and Walker obtained "excellent results" overall, the hours spent on the *Monell* claim should also be recovered. (Docket # 140 at 10–11.)

The claims against the individual officers were for use of excessive force and failure to intervene in the other officers' use of excessive force against Walker, who was experiencing a mental health crisis. The basis of the *Monell* claim was that the City failed to properly train its officers on use of force when dealing with an individual facing a mental health crisis. These claims involve "a common core of facts" and are "based on related legal

11

theories." *See Hensley v. Eckerhart*, 461 U.S. at 435. Defendants acknowledge that they "attempted to comb through the invoice and identify entries related to the *Monell* claim," (Docket # 139 at 9); however, they were only able to identify 5.5 hours. It is highly unlikely counsel devoted such little time to the *Monell* claim, thus demonstrating that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *See Hensley*, 461 U.S. at 435. The Supreme Court counsels that "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.* For this reason, I will not attempt to distinguish between the time spent on these interrelated claims to cut the time spent on the *Monell* claim.

Thus, I found the following hours reasonably spent:

| Attorney/Paralegal | Hours Worked |
|---|---|
| Attorney Ovbiagele | 327.9 |
| Attorney Baker | 144.4 |
| Attorney Cade | 163.5 |
| Attorney Dartt | 93.6 |
| Attorney Brown | 31.3 |
| Attorney Mirka | 1.2 |
| Attorney Pusick | 0 |
| Attorney Bedder | 0 |
| Paralegal O'Neill | 151.9 |
| Paralegal Baldwin | 56.1 |
| Legal Assistant Daniel | 1.60 |
| Law Clerk Gross | .6 |
| Law Clerk Wagner | 2 |
| **TOTAL** | **974.1** |

### 1.2    Hourly Rates

Defendants challenge the hourly rates charged by all eight attorneys; they do not challenge the hourly rates of the paralegals, law clerks, or the legal assistant. (Docket # 139 at 2–4.) Because I have cut the entirety of Attorneys Pusick's and Bedder's hours, I need not address the challenge to their hourly rates.

12

The determination of an attorney's "reasonably hourly rate" is to be based on the "market rate" for the services rendered. *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999) The burden of proving the "market rate" is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *Id.* at 554–55. An attorney's "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* at 555 (internal quotation and citation omitted). Furthermore, the "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id.* If the district court is unable to determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence. *Id.* The next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Id.* Once again, the party seeking a fee award bears the burden of establishing the market rate for the work; however, if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Beginning with the attorneys employed by OVB Law & Consulting, Attorney Ovbiagele provides a declaration articulating the current hourly rates for each attorney at his firm. (Declaration of Ohioma Emil Ovbiagele ("Ovbiagele Decl.") ¶¶ 2, 13–15, 18, Docket # 131.) OVB Law & Consulting, however, is not charging Walker its normal hourly rates. Rather, counsel are representing Walker on a contingency fee basis. (Ovbiagele Decl. ¶ 12, Ex. A.) For this reason, I do not have evidence of each attorney's "actual billing rate" in this

case. "Recognizing the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements, we have advised district courts to rely on the 'next best evidence' of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Spegon*, 175 F.3d at 555).

Once again, the attorneys at OVB Law & Consulting charge the following hourly rates:

| | |
|---|---|
| Attorney Ovbiagele | $300-$350 |
| Attorney Baker | $275-$300 |
| Attorney Dartt | $120-$250 |
| Attorney Brown | $250 |
| Attorney Mirka | $250 |

In support of these attorneys' hourly rates, Walker provides the declarations of Attorney Ryan L. Woody and Attorney Mark L. Thomsen. Attorney Woody avers that he graduated from Marquette University Law School in 2004 and is a partner in the Milwaukee law firm of Matthiesen, Wickert & Lehrer, S.C. (Declaration of Ryan L. Woody ("Woody Decl.") ¶¶ 2–4, Docket # 133.) Attorney Woody avers that he regularly represents parties in complex federal litigation in Wisconsin and before this Court. (*Id.* ¶ 3.) He states that based on his "knowledge of prevailing rates in the community of attorneys who regularly handle complex federal litigation in this court, the hourly rates charged by Attorneys Ovbiagele and Baker and their firm are within the range of rates charged to clients who pay by the hour for legal services rendered by attorneys of similar skill, reputation and experience in this legal community." (*Id.* ¶¶ 7–8.)

14

Attorney Thomsen states that he is a 1987 graduate of Marquette University Law School and is a current named partner in the Milwaukee law firm of Gingras, Thomsen and Wachs LLP. (Declaration of Mark L. Thomsen ("Thomsen Decl.") ¶¶ 3–4, Docket # 134.) Attorney Thomsen avers that he regularly represents plaintiffs in "civil rights, personal injury and other high-stakes personal injury matters in this State, and often before this Court." (*Id.* ¶ 2.) Like Attorney Woody, Attorney Thomsen avers that the hourly rates of $275.00–$350.00 per hour "are fair and appropriate rate for Attorneys Ovbiagele and Baker's time in a civil rights matter in the Milwaukee area, especially based on their respective skill, experience, and education." (*Id.* ¶ 11.)

Defendants argue that these declarations are unhelpful for determining the market rate because neither of these attorneys have comparable experience to the attorneys at OVB Law & Consulting. (Docket # 139 at 3.) I agree. Both Attorneys Woody and Thomsen have significantly more experience than any of the attorneys seeking fees from OVB Law & Consulting. They do not provide what they charge as an hourly rate for § 1983 litigation, nor do they provide specifics of, for example, the hourly rate of counsel at their respective law firms with similar years of experience as the OVB Law & Consulting attorneys. Rather, both attorneys appear to merely "offer [ ] their opinions concerning the market rate for [counsel's] services; they did not give any specific evidence of what they had charged their clients for similar services." *See Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001).

Defendants suggest hourly rates of $225 for Attorney Ovbiagele, $200 for Attorney Baker, $200 for Attorney Brown, and $150 for Attorneys Dartt and Mirka. (Docket # 139 at 3–4.) Defendants point to a recent decision from this Court on a § 1988 fee petition,

15

*Froemming v. Carlson*, No. 19-CV-996-JPS, 2023 WL 6215371 (E.D. Wis. Aug. 14, 2023). In that case, counsel for defendant requested an hourly rate of $250, to which the Court found that the "rate of $250 per hour for civil rights legal work presents no glaring issue here, particularly since Plaintiff does not specifically object to this rate." *Id.* at *2.

With no clear guidance on the actual market rate for attorneys with the experience levels of the OVB Law & Consulting attorneys, I must independently determine the appropriate rate. *See Montanez v. Simon*, 755 F.3d at 553. Attorney Dartt is a 2023 graduate of Marquette University Law School. (Ovbiagele Decl. ¶ 15.) Attorney Dartt performed work on Walker's case both as a law student and as a first-year associate. (*Id.*) His hourly rate was $120/hour prior to law school graduation and raised to $250/hour in June 2023 after graduating law school. (Docket # 131-2 at 21; Ovbiagele Decl. ¶ 15.) Attorney Mirka graduated from Marquette University Law School in 2021 and also charges $250/hour. (Ovbiagele Decl. ¶ 18.) Attorney Brown, a 2018 graduate of the University of Wisconsin Law School, also charges $250/hour. (Ovbiagele Decl. ¶ 14.)

Attorney Baker graduated from Marquette University Law School in 2018 and charged $275/hour from January 2022 until she was made a partner in December 2022 (Declaration of Samantha H. Baker ("Baker Decl.") ¶¶ 2, 4, Docket # 132) and began charging $300/hour (*id.* ¶ 5). Attorney Ovbiagele graduated from Marquette University Law School in 2014 and worked at two different law firms before establishing his own law firm in June 2016, focusing on "all aspects of litigation, including civil rights litigation, as well as general business counseling and representation." (Ovbiagele Decl. ¶¶ 2, 4–5.)

The hourly rates for associates at OVB Law & Consulting are inconsistent. Both a first-year associate in 2023 and a fourth-year associate in 2022 billed at a rate of $250/hour,

while a different fourth-year associate in 2022 (Baker) charged $275/hour. The rate of $250/hour for a first-year associate strikes me as high, especially given the same rate was charged for an attorney with four years of experience. Thus, I find an appropriate hourly rate for Attorneys Dartt, Mirka, Brown, and Baker is $200/hour.

Attorney Ovbiagele had approximately 8 years of experiencing practicing law when he began billing on Walker's case and charged $300/hour. (Docket # 131-2 at 1.) His hourly rate increased to $350/hour in January 2023. (*Id.* at 15.) Attorney Ovbiagele has earned many honors and accolades since graduating law school, including serving as the President of the Milwaukee Bar Association (Ovbiagele Decl. ¶¶ 8–10). He does not specialize in any one type of litigation, rather focusing on "all aspects of litigation." However, in the context of this case, where Walker is also billing the City for the expertise of an additional trial attorney with more experience than Ovbiagle, I find an hourly rate of $275, closer to the $250 hourly rate approved in the recent case of *Froemming*, reasonable for Attorney Ovbiagele.

Attorney Cade graduated from the University of Michigan School of Law in 1996 and has litigated for the past 28 years. (Declaration of Nathaniel Cade ("Cade Decl.") ¶¶ 2–6.) Attorney Cade charges between $475-515/hour but agreed to bill on Walker's case at $505/hour. (*Id.* ¶ 7.) Attorney Cade's bills in this case are directed to Attorney Ovbiagele, not to Walker. (Docket # 137-1.) Thus, like counsel at the OBV Law & Consulting firm, I have no evidence of Attorney Cade's actual billing rate in this case beyond his own affidavit. Turning to the next best evidence, Attorney Cade also provides the declarations of three attorneys, Attorney Thomsen, Attorney Chris Trebatoski, and Attorney Christopher P. Katers. Both Attorney Thomsen and Attorney Trebatoski are very experienced litigators,

17

with 37 and 40 years of experience, respectively. (Declaration of Mark Thomsen ("Thomsen Decl.") ¶ 3, Docket # 137-2; Declaration of Chris Trebatoski ("Trebatoski Decl.") ¶ 3, Docket # 137-4.) Both attorneys aver that they regularly represent plaintiffs in civil rights cases; however, neither state what they charge as an hourly rate for such cases. Given similarity in experience and practice area as Attorney Cade, this information would have been exceedingly helpful. Rather, both counsel merely offer their opinion that Attorney Cade's rate of $505/hour is reasonable. Attorney Cade also provides the declaration of Attorney Christopher Katers, an attorney with approximately 16 years of experience, who similarly opines that $505/hour is reasonable, but fails to state what his hourly rate is for similar cases. (Declaration of Christopher P. Katers ("Katers Decl."), Docket # 137-3.)

Thus, Walker again fails to meet his burden of establishing the market rate; thus, I must independently determine the appropriate rate. *See Montanez v. Simon*, 755 F.3d at 553. In July 2022, Attorney Cade sought fees with an hourly rate of $425 in an § 1983 case in this district, *Spencer v. Vagnini, et al.*, Case No. 16-CV-662 (E.D. Wis.). (*See* Docket # 179 in Case No. 16-CV-662.) Thus, Defendants argue this is an appropriate hourly rate for Attorney Cade's work. (Docket # 139 at 4–5.) Walker argues that utilizing the inflation rate from March 2020 until December 2023 of 19.59%, his rate more appropriately should be $507.79 to match the rate of inflation. (Docket # 140 at 5.) While Attorney Cade certainly has the right to raise his hourly rate, there is no legal support for the premise of tying hourly rate increase with the United States' annual inflation rate. In fact, in *Prather v. Sun Life & Health Ins. Co. (U.S.)*, 852 F.3d 697 (7th Cir. 2017), the Seventh Circuit reduced an attorney's hourly rate from $630 to $620 on the grounds that in 2017, the "$630 rate reflected an excessive rate increase of 5 percent from his hourly rate of $600 in 2015." *Id.* at 700.

Attorney Cade's hourly rate increased by approximately 19 percent from 2022 until the present. I find that the hourly rate of $425 more appropriately reflects the market rate for an attorney of Attorney Cade's experience. Thus, I will use the following hourly rates in calculating the lodestar amount:

| | |
|---|---|
| Attorney Ovbiagele | $275 |
| Attorney Baker | $200 |
| Attorney Dartt | $200 |
| Attorney Brown | $200 |
| Attorney Mirka | $200 |
| Attorney Cade | $425 |

### 1.3    Final Lodestar Amount

As stated above, the lodestar is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Pickett*, 664 F.3d at 639. Thus, I calculate the lodestar amount as follows:

| Attorney/Paralegal | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Attorney Ovbiagele | 327.9 | $275 | $90,172.50 |
| Attorney Baker | 144.4 | $200 | $28,880 |
| Attorney Cade | 163.5 | $425 | $69,487.50 |
| Attorney Dartt | 93.6 | $200 | $18,720 |
| Attorney Brown | 31.3 | $200 | $6,260 |
| Attorney Mirka | 1.2 | $200 | $240 |
| Paralegal O'Neill | 151.9 | $120 | $18,228 |
| Paralegal Baldwin | 56.1 | $120 | $6,732 |
| Legal Assistant Daniel | 1.6 | $120 | $192 |
| Law Clerk Gross | 0.6 | $120 | $72 |
| Law Clerk Wagner | 2 | $120 | $240 |
| **TOTAL** | **974.1** | | **$239,224** |

### 2.    *Adjustment of the Lodestar*

Although there is a strong presumption that the lodestar represents the reasonable fee, *Pickett*, 664 F.3d at 639, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained, *Hensley*,

Case 2:20-cv-00487-NJ    Filed 03/29/24    Page 19 of 25    Document 143

461 U.S. at 430, n.3, 436. Walker argues that the lodestar should be increased by 33.33% due to the fact Walker "obtained an excellent result," including the size of the verdict; the alleged bad faith of the City by only offering $420,000 to settle the case; and due to the fact the Walker skillfully navigated the case *pro se* for two years. (Docket # 130 at 11–12.)

Because the lodestar figure already includes most, if not all, of the relevant factors constituting a reasonable attorney's fee, the Supreme Court has "repeatedly said that enhancements may be awarded in rare and exceptional circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (internal quotation and citation omitted). The *Perdue* Court found that the quality of an attorney's performance generally should not be used to adjust the lodestar because these considerations are already reflected in the reasonable hourly rate. *Id.* at 553. Given the quality of counsel's performance does not warrant an adjustment, it is unclear how Walker's performance either litigating the case *pro se* or during trial would support increasing the lodestar.

Nor does Walker cite any authority supporting adjustment of the lodestar based on the parties' failure to settle the case. Even if this were an appropriate factor to consider, Walker does not contend that Defendants refused to engage in settlement negotiations; Walker merely criticizes the City for "valu[ing] the case at $420,000." (Docket # 130 at 12.) Walker's disagreement with the City's valuation of the case, however, does not mean Defendants negotiated in bad faith, nor does a jury verdict awarded above Defendants' valuation prove Defendants negotiated in bad faith.

Finally, Walker argues that the level of success warrants an upward adjustment of the lodestar amount. Walker alleges that increasing the lodestar will deter future constitutional violations of the City. (*Id.*) But while Walker was awarded $2 million in

20

compensatory damages on his excessive force and failure to intervene claims, Walker failed to prove that the actions of any of the individual defendants warranted punitive damages and failed to prove the *Monell* claim against the City for failure to train. (Docket # 123.) It is unclear why Walker seeks to send a message of deterrence to the City when the jury found in favor of the City and failed to award punitive damages (one of the purposes of which is for deterrence). While Walker's lack of success on these issues may not warrant a downward departure, Walker's partial success certainly does not warrant an upward adjustment. Thus, I find no basis for adjusting the lodestar amount. Walker is awarded $239,224 in attorneys' fees.

  *3. Costs*

  Walker also seeks $54,625.65 in costs. (Ovgiagele Decl. ¶ 28, Ex. C, Docket # 131-3; Docket # 137-1.) Civil L. R. 54(a)(1) (E.D. Wis.) provides the procedure for requesting taxable costs under Fed. R. Civ. P. 54(d):

> Unless otherwise provided by this Rule, no later than 14 days after the entry of the judgment, the party in whose favor a judgment for costs is awarded or allowed by law and who claims the party's costs must file the party's bill of costs and serve the bill of costs on all opposing parties. The Clerk of Court's office has forms available for this process or the party may use the party's own forms. If a timely Fed. R. Civ. P. 59 motion for a new trial or amendment of the judgment has been filed, the time for filing and serving the bill of costs commences upon the entry of the order resolving the motion.

The clerk of court will then provide the parties with a schedule in which to submit the parties' positions and objections in briefs, to be submitted to the clerk of court. "The local rule establishes a streamlined procedure whereby the clerk fixes the costs and decides any disputes, with the judge stepping in to exercise his or her discretion only if either party complains about the clerk's assessment." *Brewer v. Wisconsin Bd. of Bar Examiners*, No. 04-C-

21

0694, 2007 WL 1140249, at *2 (E.D. Wis. Apr. 17, 2007). Thus, as to taxable costs under Fed. R. Civ. P. 54(d), I see no reason to deviate from this district's normal practice. Walker must submit a proper bill of costs consistent with the local rule as to these taxable costs.

While 28 U.S.C. § 1920 provides a list of taxable costs, Walker also seeks non-taxable costs, the bulk of which consist of expert fees. Defendants challenge Walker's inclusion of expert fees as excessive and unreasonable. (Docket # 139 at 12.) Walker cites to *Six Star Holdings, LLC v. City of Milwaukee*, No. 10-C-0893, 2015 WL 5821441, at *9 (E.D. Wis. Oct. 5, 2015) in support of his argument that expert fees are recoverable as costs under § 1988. (Docket # 130 at 9–10.) The court, citing 42 U.S.C. § 1988(c), concluded that Congress "amended § 1988 to provide that even expert-witness fees should be included in the attorneys' fee award." *Six Star Holdings*, 2015 WL 5821441, at *9.

The *Six Star Holdings* court, however, did not look at the history of the amendment in conjunction with the plain language of the statute. In *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991), the Supreme Court found that "§ 1988 conveys no authority to shift expert fees. When experts appear at trial, they are of course eligible for the fee provided by § 1920 and § 1821." *Id.* at 102. Shortly after the *Casey* decision, Congress amended § 1988 as follows: "In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision **of section 1981 or 1981a of this title**, the court, in its discretion, may include expert fees as part of the attorney's fee." 28 U.S.C. § 1988(c) (emphasis added). In other words, Congress provided for the recovery of expert fees, but only in cases brought pursuant to Section 1981 or 1981a. *See Awalt v. Marketti*, No. 11 C 6142, 2018 WL 2332072, at *7 (N.D. Ill. May 23, 2018).

22

Multiple courts in this circuit have reasoned that because *Casey* looked to the statutory text of § 1988 to determine whether expert fees were recoverable, and because Congress specifically amended § 1988 after *Casey* to include expert fees for cases brought under § 1981 or § 1981a, Congress did not intend expert fees to be recoverable for § 1983 actions. *See, e.g.*, *Awalt*, 2018 WL 2332072, at *7 ("The Court finds that Section 1988 does not permit recovery of expert fees in a Section 1983 case, and so will not award them here."); *Jackson v. Birkey*, No. 1:14-CV-01108-MMM, 2019 WL 2305135, at *6 (C.D. Ill. May 30, 2019) ("To date, the statute still does not permit courts to award expert fees to prevailing parties in cases brought pursuant to 42 U.S.C. § 1983."); *Thorncreek Apartments I, LLC v. Village of Park Forest*, 2016 WL 4503559, at *11 (N.D. Ill. Aug. 2016) (same).

I agree with the reasoning of these courts that § 1988(c) does not provide for the recovery of expert fees for § 1983 actions. In providing for an award of attorney's fees, § 1988(b) lists specific statutory sections, including § 1983, under which attorney's fees may be awarded. Had Congress wished to include expert fees for § 1983 actions when it amended § 1988(c) to include actions under § 1981 or § 1981a, it was certainly aware of how to do so. In awarding expert fees under § 1988(c), the court in *Six Star Holdings* fails to address why § 1983 is omitted from the plain language of § 1988(c) when other specific sections are included. For this reason, I find the court's conclusion unpersuasive. Walker is not entitled to recover expert fees under § 1988(c). Thus, finding no authority to grant expert fees under § 1983, I must strike the following requests, totaling $42,356.47:

| Date | Description | Amount |
|---|---|---|
| 12/4/2023 | Beth Brant Expert Trial Fees | $9,282.25 |
| 12/4/2023 | Brian Landers Trial Appearance | $9,774.22 |
| 10/16/2023 | Expert Beth Brant Trial Prep | $1,250.00 |
| 10/10/2023 | Brian Landers Deposition Prep | $450.00 |

23

| | Invoice 2 | |
|---|---|---|
| 10/4/2023 | Brian Landers Deposition Prep | $1,350.00 |
| 3/1/2023 | Brian Landers Final Report Invoice | $3,450.00 |
| 1/10/2023 | Dr. James Black review of medical records | $800.00 |
| 1/3/2023 | Landers Expert Fee | $8,775.00 |
| 12/13/2022 | Beth Brandt Expert Fee | $3,550.00 |
| 11/29/2022 | Maki Expert Location Fee | $650.00 |
| 11/1/2022 | Expert Retainer | $1,000.00 |
| 6/24/2022 | Landers Expert Fees | $1,025.00 |
| 5/18/2022 | Landers Retainer Fee | $1,000.00 |
| **TOTAL** | | **$42,356.47** |

Walker also seeks costs in the amount of $247.95 for Attorney Cade's parking during trial and for meals. (Docket # 137-1.) While I find Attorney Cade's parking expenses recoverable under § 1988, the meal expenses for counsel are not. *See Fields v. City of Chicago*, No. 10 C 1168, 2018 WL 253716, at *11 (N.D. Ill. 2018) ("All expenses for meals must be deducted from the expenses claimed. Fields has made no attempt to justify recovering these as properly recoverable expenses; presumably those involved would have had to eat even had they not been involved in this case."). Thus, Walker can recover costs in the amount of $149.00 for parking.

Because Walker did not separate his taxable from non-taxable costs, and Defendants do not address such costs as investigator fees, it is unclear whether additional non-taxable costs need be addressed. The parties are ordered to confer as to any remaining non-taxable costs and attempt to reach a resolution. Only if the parties are unable to do so should they seek assistance from the Court.

In sum, Walker is awarded $149.00 in non-taxable costs for parking. The parties must outline and confer as to the remaining non-taxable costs the parties did not address

with specificity. Walker must follow the procedure outlined in Civil L. R. 54(a)(1) (E.D. Wis.) as to his taxable costs.

## CONCLUSION

For the reasons explained in this decision, Walker is awarded $239,224 in attorney's fees and $149.00 in non-taxable costs. Walker is to submit a bill of costs in accordance with this district's procedure as to his taxable costs. The parties are to confer and attempt to reach a resolution as to any remaining non-taxable costs.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Walker's motion for Attorney's Fees and Costs (Docket # 130) is **GRANTED IN PART AND DENIED IN PART**. Walker is awarded $239,224 in attorney's fees and $149.00 in non-taxable costs.

**IT IS FURTHER ORDERED** that Walker's Motion to Seal (Docket # 136) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 29th day of March, 2024.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge