# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOSEPH WALKER,

      **Plaintiff,**

      **v.**                           **Case No. 20-CV-487**

**CITY OF MILWAUKEE, et al.,**

      **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR NEW TRIAL, TO ALTER OR AMEND THE JUDGMENT, OR FOR REMITTITUR

Following a week-long jury trial, on December 1, 2023, the jury returned a verdict in favor of the plaintiff, Joseph Walker, and against the defendants, Milwaukee Police Department ("MPD") Sergeant Tanya Boll and MPD Officers Balbir Mahay, Jeremy Gonzalez, Daniel Clifford, and Lisa Purcelli, on his excessive force and failure to intervene claims pursuant to 42 U.S.C. § 1983. (Docket # 123.) Walker was awarded $1 million in compensatory damages on each claim. (*Id.*) The jury determined, however, that Walker did not prove that punitive damages should be assessed as to either claim. (*Id.*) The jury found in favor of the City of Milwaukee on Walker's failure to train claim. (*Id.*)

Defendants now move for a new trial, to alter or amend the judgment, or for remittitur pursuant to Fed. R. Civ. P. 59. (Docket # 148.) For the reasons explained below, Defendants' motion for a new trial is denied. However, Defendants' motion to alter the judgment is granted in part. The judgment is amended to reflect compensatory damages totaling $1 million.

## LEGAL STANDARD

Defendants bring their motion pursuant to Fed. R. Civ. P. 59(a), (b), & (e). Federal Rule of Civil Procedure 59(a) provides that the court may, on motion, grant a new trial on all or some of the issues—and to any party—after a jury trial for any reason for which a new trial has been granted in an action at law in federal court. Fed. R. Civ. P. 59(a). The motion must be filed no later than 28 days after entry of the judgment. Fed. R. Civ. P. 59(b). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). "Challengers bear a 'particularly heavy burden' because a court will set aside a verdict as contrary to the manifest weight of the evidence 'only if no rational jury could have rendered the verdict.'" *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (quoting *Moore ex. rel. Estate of Grady v. Tuleja*, 546 F.3d 423, 427 (7th Cir. 2008)). Furthermore, the reviewing court must view the evidence in the light most favorable to the prevailing party, leaving issues of credibility and weight of evidence to the jury. *Id.* at 444–45.

Federal Rule of Civil Procedure 59(e) allows for post-trial motions to alter or amend a judgment, including by way of remittitur. *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1007 (N.D. Ill. 2016). Rule 59(e) motions, however, may not be used to present new theories or arguments that could and should have been presented earlier, or to present evidence for the first time that was available earlier. In deciding Rule 59(e) motions, the Court must accord substantial deference to the jury's assessment of damages; however, it must also ensure that the award is supported by competent evidence. *Id.* (internal quotations

and citations omitted). If the Court finds that damages are excessive, the proper remedy is remittitur rather than a new trial. *Id.*

## ANALYSIS

Defendants argue pursuant to Fed. R. Civ. P. 59(a) that they are entitled to a new trial because the cumulative effect of adverse evidentiary rulings denied them a fair trial, caused the jury to be misled, and resulted in a verdict against the great weight of the evidence. (Docket # 149 at 3.) Defendants further argue pursuant to Fed. R. Civ. P. 59(e) that the judgment should be amended to reflect that Defendants are entitled to judgment as a matter of law based on qualified immunity and that the damages award was excessive, not rationally related to the evidence presented, and allowed Walker to obtain a double recovery. (*Id.* at 9–22.) I will address each argument in turn.

> 1.     *Motion for a New Trial*

The jury found that Walker proved that Gonzalez, Mahay, Clifford, and Boll used excessive force against him when he was shot on April 6, 2014. (Docket # 123.) They further found that Walker proved that Gonzalez, Mahay, Clifford, Boll, and Purcelli failed to intervene to prevent the use of excessive force against him. (*Id.*) Defendants challenge several adverse evidentiary rulings rendered prior to trial that Defendants argue resulted in the jury hearing "only Plaintiff's sanitized version of [events]" and "left the jury without critical information to assess witness credibility," causing them to be misled. (Docket # 149 at 3.) Defendants specifically challenge the following rulings:

> (a) denying Defendants' motion in limine #12 to give a *Gilbert* instruction; (b) granting Plaintiff's motion in limine #9 to prohibit introduction of the 911 call; (c) prohibiting Defendants from telling the jury that plaintiff was convicted of Disorderly Conduct with a Dangerous Weapon based on his conduct on the night of the shooting; and (d) preventing Defendants from

3

presenting impeachment evidence that contradicted his trial testimony that he never had a gun outside the house.

(*Id.* at 4.)

### 1.1    Motion in *Limine* Regarding *Gilbert* Instruction

Prior to trial, Defendants sought an instruction pursuant to *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008) to inform the jury that a Milwaukee County jury had already found that Walker possessed a firearm on the front porch at the time of the shooting when they convicted him of Disorderly Conduct While Possessing A Dangerous Weapon. Defendants' motion was denied in a written decision dated November 22, 2023. (Docket # 115.) In denying the motion, I found that, given a fair reading of the jury instructions and verdict form in Walker's state case, it did not follow that the jury necessarily found that Walker possessed a firearm on his person while outside on the porch. (Docket # 115 at 5–6.) I concluded that, based on the jury instruction given on "possession," while the jury could have found that Walker was guilty of disorderly conduct while possessing a gun outside on his porch, the jury could have just as well found that Walker was guilty of disorderly conduct while constructively possessing firearms inside his house while he was out on the porch. (*Id.* at 6–7.)

To the extent Defendants argue the Court's evidentiary ruling on the applicability of a *Gilbert* instruction was incorrect, Defendants fail to develop any argument as to this issue. Rather, they simply argue that the lack of a *Gilbert* instruction dramatically and substantively affected the trial outcome. (Docket # 149 at 6.) But, given the ambiguity in the jury's holding during Walker's state court proceedings, it would be incorrect to instruct the jury that a state court jury specifically found Walker possessed a firearm on the front porch

4

at the time of the shooting. Rather, the jury heard Walker's testimony that he did not have a gun on his person on the porch, as well as the officers' testimony that they believed they saw a gun on Walker's person while he was on the porch. Defendants have not demonstrated a new trial is warranted on this ground.

### 1.2    Exclusion of the 911 Call

Prior to trial, Walker moved *in limine* to preclude the audio recording of a 911 call made by Walker's mother, Luann Will. At the final pretrial conference, I initially found that the 911 call was relevant to Walker's *Monell* claim and denied Walker's motion. Walker subsequently moved for reconsideration of this order (Docket # 96) and Defendants responded (Docket # 101). An additional hearing was held where the parties clarified the 911 audio recording was being used in connection with the claims against the individual officers, not against the City. With this clarification and after hearing additional arguments, I granted the motion and disallowed Defendants from playing the 911 audio recording. I found that, because the dispatcher was not named as a witness, the Defendants lacked a proponent to introduce this evidence. I further found that, because none of the defendant officers heard the 911 call, the audio was irrelevant to what the individual officers knew at the time of the alleged constitutional violation.

The crux of Defendants' argument is that it was necessary to play the 911 call so that the jury could hear the "tone and manner" of Will's voice in order to cut against Walker's and his son's testimony that the fight between mother and son that night was nothing out of the ordinary. (Docket # 149 at 7–8.) The issue, of course, is that at the time of trial, Will was deceased. Thus, she could not be called as a witness. And while Defendants now argue that the "best evidence" of the situation is contained on the 911 call (*id.* at 7), Defendants

5

never proffered a theory of legal admissibility. During the November 20, 2023 conference, Plaintiff correctly argued that the 911 audio recording was hearsay. Hearsay is an out-of-court statement offered to prove the truth of whatever it asserts. Defendants wished to use Will's 911 audio statement to demonstrate the truth of her statement that Walker was acting out of the ordinary that night and that she felt in danger. (*Id.*) At the hearing, Defendants raised the possibility that the 911 audio could be admissible as an excited utterance. Defendants, however, did not pursue or further develop this argument. Nor did the Defendants have a proponent of the audio recording, such as the 911 dispatcher who took the call. The audio could not be played in court untethered to a proponent.

Defendants also argue that the 911 recording was relevant to the claims against the individual officers because under *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988), the Court can consider evidence unknown to the officers at the time of the excessive force. But the *Sherrod* court recognized only "two specific instances wherein a court could look at evidence outside the knowledge of the police officer in an unreasonable force case." *Common v. City of Chicago*, 661 F.3d 940, 944 (7th Cir. 2011). First, the court noted that the credibility of the witness "can always be attacked by showing that his capacity to observe, remember or narrate is impaired" and second, "a witness could always be impeached by demonstrating contradictions in his testimony." *Id.* While Defendants argue that the 911 audio was necessary to impeach Walker's "sanitized version of the events preceding the call," (Docket # 149 at 8), there is no indication that the 911 call either shows one's capacity to observe, remember, or narrate is impaired, or shows contradictions in Walker's testimony. Rather, the jury heard both Walker's version of events (i.e., that the argument was not that bad) and the account of Sergeant Boll, who spoke to Will that night. Boll

6

testified that Will appeared "very afraid" of Walker. (Boll Testimony, Nov. 29 Draft Tr. at 109.) Defendants have not shown the trial was unfair on this ground.

### 1.3 Exclusion of Prior Conviction and Evidence of Guns

Defendants also argue that a new trial is warranted based on the exclusion of Walker's prior conviction for disorderly conduct and evidence that guns were later found in his bedroom. (Docket # 149 at 4, 8–9.) As to the prior convictions, while I allowed evidence that Walker had prior convictions, I disallowed evidence regarding the specifics of the convictions. Defendants do not develop any argument as to how this ruling was error. Thus, I will not address it further.

Defendants further argue that "prohibiting Officer Ratkowski from testifying that Plaintiff said, 'after I was shot, I put all my shit back in my room,'" and precluding evidence that firearms were later recovered from Walker's bedroom caused the "jury to hear a one-sided account" of the situation. (Docket # 149 at 8–9.) But again, Defendants have not shown that either piece of evidence fits into the *Sherrod* exceptions. The parties stipulated that Walker legally owned several firearms. (Docket # 90 at ¶ 11.) Walker testified that he left his guns in his room when he exited his house. (Walker Testimony, Nov. 29, Draft Tr. at 54.) As such, hearing testimony that guns were recovered from Walker's bedroom after the fact does not contradict his statement that he did not have a gun on the porch at the time of the shooting. Defendants have not shown a new trial is warranted on these grounds.

Defendants also generally argue that the cumulative effect of these rulings caused the trial to be unfair to Defendants. (Docket # 149 at 9.) But whether considering these rulings individually or cumulatively, Defendants have failed to meet their "heavy burden" of showing that no rational jury could have rendered this verdict.

2. *Motion to Amend/Alter the Judgment*

Defendants move to alter or amend the judgment under Fed. R. Civ. P. 59(e) on two grounds: first, they argue for reconsideration of the Court's prior ruling that they are entitled to judgment as a matter of law on Walker's failure to intervene claim based on qualified immunity and second, that the damages award was excessive, not rationally related to the evidence, and permitted a double recovery.

2.1 Reconsideration of Qualified Immunity Ruling

Defendants moved for judgment as a matter of law on Walker's failure to intervene claims based on qualified immunity. Defendants' motion was rejected. (Docket # 142.)

Rule 59(e) allows a party to move the court for reconsideration of a judgment within 28 days following the entry of the judgment. A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Apart from manifest errors of law, "reconsideration is not for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Whether to grant a motion for reconsideration "is left to the discretion of the district court." *Id.*

While Defendants generally assert the Court's previous ruling was "legal error," (Docket # 149 at 11), Defendants make no arguments to demonstrate that the Court made a manifest error of law. On the contrary, Defendants merely rehash the arguments previously made and rejected, even stating that they "incorporate herein the arguments previously made and rejected, and maintain that denial constituted legal error." (*Id.* at 9.) This is precisely what a Rule 59(e) motion for reconsideration *cannot* do—rehash previously rejected arguments. Defendants have done nothing to meet their burden of showing a manifest error of law. The motion for reconsideration is denied.

### 2.2    Challenge to Damages Award

Walker was awarded $1 million in compensatory damages on both his excessive force and failure to intervene claims. (Docket # 123.) Defendants move under Rule 59(e) to reduce Walker's $2 million damages award on the grounds that it is duplicative, excessive, and unsupported by the evidence. (Docket # 149 at 11–22.)

First, Defendants argue that the $1 million verdict on the excessive force and failure to intervene claims are duplicative because, despite bringing two separate causes of action, Walker only sustained one injury and thus he cannot recover twice for the same injury. (*Id.* at 13–14.) Walker argues that the "double recovery rule" does not apply "until a final judgment is entered" and asserts that he does not intend to bring a separate lawsuit after successfully recovering from the individual defendants. (Docket # 155 at 10–11.)

Walker seems to confuse claim preclusion and the principal of double recovery. While it is true that claim preclusion may prevent a plaintiff from asserting claims for the same injury in two separate lawsuits (Docket # 155 at 9–10), it is also true that a plaintiff generally cannot recover twice for the same injury within the same lawsuit, "regardless of

9

how many defendants could be liable for that single injury, or how many different theories of recovery could apply to that single injury." *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018); *see also Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) ("Federal common law prevents § 1983 plaintiffs from recovering twice for the same injury.").

Furthermore, failure to intervene is an alternative theory of liability, *see Conforti v. City of Franklin*, 559 F. Supp. 3d 815, 821 (E.D. Wis. 2021), that cannot be maintained without an underlying constitutional violation, *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). For this reason, as one court in this district stated, a failure to intervene claim is redundant to an excessive force claim. *Conforti*, 559 F. Supp. 3d at 820 ("The plaintiff cannot recover twice for the same injuries . . . and so if the jury finds for the plaintiff on the excessive-force claims, the failure-to-intervene claims will be redundant.") (internal citation omitted). Walker does not contend that he suffered different injuries based on excessive force and failure to intervene. Rather, the fact the jury awarded the same amount for both claims supports that there is only one injury in this case. In *Duran v. Town of Cicero, Ill.*, 653 F.3d 632 (7th Cir. 2011), the court stated that damages "are not assessed by defendant or by claim but for an injury," and where "a plaintiff has suffered a single, indivisible injury . . . the jury's task is to award a sum of money to compensate the plaintiff for that injury, not to enter a damages award against each defendant who is or will be liable on the judgment." *Id.* at 640.[1]

---

[1] Walker criticizes Defendants for "conveniently leav[ing] out the fact that their purported quote from *Duran* was from a dissenting opinion in *Thomas v. Cook*, 604 F.3d 293 (7th Cir. 2010)." (Docket # 155 at 11.) But the

Walker further argues that the double recovery rule does not apply because the defendant officers were not the same for both claims. (Docket # 155 at 10.) Purcelli was only found liable for failure to intervene but not for excessive force, while Boll, Mahay, Gonzalez, and Clifford were found liable for both claims. (Docket # 123.) But this does not change the fact Walker suffered a single injury. Again, the jury must award a sum of money to compensate for the injury, "not to enter a damages award against each defendant who is or will be liable on the judgment." *Duran*, 653 F.3d at 640. All five defendant officers are jointly and severally liable for the entirety of Walker's damages, totaling $1 million. Thus, I find that Walker's damages award must be reduced from $2 million to $1 million to avoid a double recovery.

Defendants further argue that the damages amount is excessive, bears no rational relationship to the trial evidence, and is inconsistent with other similar cases. (Docket # 149 at 16.) In reviewing a jury verdict for damages to determine whether it is excessive, "we must defer to the judgment of the jury unless the award is 'monstrously excessive' or 'so large as to shock the conscience of the court.'" *Levka v. City of Chicago*, 748 F.2d 421, 424 (7th Cir. 1984) (internal citation omitted). One factor courts "must consider" in determining whether to set aside an award is whether the award is out of line compared to other awards in similar cases. *Id.*

Defendants agree that the evidence at trial supports a finding of actual damages consisting of medical treatment in the amount of $67,688.19. (*Id.* at 17–18.) Thus, utilizing the reduced damages award of $1 million, that means the jury awarded $932,311.81 in damages for pain and suffering.

---

*Duran* court *does* make this statement and in so doing, cites to the *Thomas* dissenting opinion in its majority opinion. Thus, to the extent the *Duran* majority relies on this statement, it is binding precedent.

11

Walker argues that the Seventh Circuit disfavors relying on comparative damages awards in determining excessiveness, citing *Adams v. City of Chicago*, 798 F.3d 539, 545 (7th Cir. 2015). That is not entirely accurate. Rather, the *Adams* court noted that the court *should* look at past decisions to see if the award is out of line with similar cases, but to exercise caution because "one can always find excessive force cases with verdicts at different levels." *Id.* The *Adams* court noted that past damages awards provide a reference point for assessing reasonableness, not a range beyond which awards are necessarily excessive. *Id.*

Defendants provide a table of recent damages awards in other excessive force cases involving gunshot wounds and argue that Walker's damages award is excessive in comparison. (Docket # 149 at 20–21.) The table purports to show awards approaching or exceeding $1 million only when death or damage to vital organs has occurred, otherwise damages ranged from $78,500.00 to $725,00.00. (*Id.*)

While, as the *Adams* court states, past damages awards provide a reference point for assessing reasonableness, it is unclear to me that the cases Defendants propose are similar enough to be of much assistance. For example, several of the cited cases concluded by settlement, not jury verdict. *See, e.g.*, *White v. City of Chicago*, 18-CV-4138, 2019 WL 7792482 (N.D. Ill. 2019); *Ball v. Cortes*, No. 11-CV-8741, 2019 WL 5296748 (N.D. Ill 2019), *Davis, et al. v. City of Milwaukee, et al.*, 19-CV-1523 (E.D. Wis.); *Golatte v. City of Chicago, et al.*, No. 17-CV-929, 2021 WL 5450386 (N.D. Ill. 2021). Many factors play into a party's decision to settle a case.

Another of Defendants' cited cases, *Evans v. Hansen*, 22-cv-606 (E.D. Wis.) did go to jury verdict and involved a police shooting where plaintiff was shot multiple times in the back. In this case, the jury awarded plaintiff only $150,000.00 in compensatory damages for

12

the officer's use of force. (Docket # 96 in Case No. 22-CV-606). In that case, the plaintiff testified that, after being shot, he felt pain all over and thought he was going to die. (Docket # 99 at 22 in Case No. 22-CV-606.) However, the jury also heard evidence that the plaintiff was fleeing from law enforcement after stealing gas from a gas station, crashing his vehicle, taking off on foot, running through a residential neighborhood, and trying to hide in someone's house by smashing a hole inside a patio door window and entering, surprising the homeowner. (*Id.* at 7–13.) While Defendants argue that the jury likely inflated Walker's damages due to sympathy for Walker's "troubled life," (Docket # 149 at 23), it could be just as likely that the jury in *Evans* undervalued the plaintiff's damages due to the rather inflammatory facts.

The *Evans* plaintiff also testified that his continuing pain was not substantial, stating that presently, he only felt pain "every once in a while," but that his scar was a constant reminder that he could have died. (Docket # 99 at 31–33 in Case No. 22-CV-606.) While Walker similarly described pain all over when he was shot as well as a fear of dying, (Walker Testimony, Nov. 29, Draft Tr. at 11–12, 15), Walker also testified that after he was shot, he lost control of his bowels and soiled himself (*id.* at 12). As to his present condition, Walker testified that he continues to have a lot of pain and where "the trajectory of the bullet went I feel it." (*Id.* at 18.) He testified that he thinks of the shooting daily, and that since the shooting he has lost motivation to do things and has gained weight. (*Id.* at 17–18.) Walker stated that for two years after the shooting he experienced daily nightmares where he would wake up screaming and that he continues to experience nightmares and flashbacks, stating that the shooting has become a "part of [his] life." (*Id.* at 17.) He testified that it "destroy[ed] everything" and that he is now on disability. (*Id.* at 17–18.)

The jury was instructed that, in addition to the actual loss of money, they could consider Walker's mental and emotional pain and suffering or loss of a normal life in awarding compensatory damages. (Docket # 122 at 30.) Pain is "uniquely subjective" and some level of "uncertainty is unavoidable when making difficult estimates of pain and suffering." *Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009). Given Walker's testimony regarding the impact of the shooting on his physical and mental health, I do not find that $1 million in compensatory damages shocks the conscience. Thus, while Walker cannot obtain a double recovery for both excessive force and failure to intervene, the jury's $1 million determination will stand.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendants' Motion for New Trial, to Alter or Amend the Judgment, or for Remittitur (Docket # 148) is **GRANTED IN PART AND DENIED IN PART**. The judgment is amended to reflect compensatory damages in the total amount of $1 million.

Dated at Milwaukee, Wisconsin this 29th day of July, 2024.

BY THE COURT

_____

NANCY JOSEPH
United States Magistrate Judge

14